## · CHARLES SMITH *vs.* T. JOSEPH BEAUDRY.

Middlesex.    November 13, 1899. — February 28, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Personal Injuries — Master. and Servant — Assumption of Risk —*
*. Action — Evidence.*

A person, who has been employed in one die-shop for eleven months, during which
he was engaged in grinding for one-third of the time, including, during a part of
that time, "truing" the grindstone, and who has worked for the defendant for
eight months, and during that time was employed in grinding dies and "tru-
ing" the grindstone whenever there was any grinding to be done, will be held
to have assumed the risks arising from the position of the stone in relation to
the rest which supported the "truing iron" and from the facts that there was
a spring to the rest, that the straps of the groove in the top of the timbers were
loose, that the threads of the nuts screwed on the tops of the bolts attached to
the ends of the rest were worn, and that he was furnished with a gas pipe in
place of a quarter-inch wire, or a roll, for use in "truing" the grindstone, and
such a person cannot maintain an action against his employer for injuries sus-
tained, while "truing" the stone, by having his hand carried with the point
of the pipe down between the rest and the stone, though there is evidence that
he is not an experienced grinder.

The facts, that when a person suing for an injury, who previously had been employed
to work on a grindstone, was employed a second time, four months after his first
employment terminated, he was employed not to grind but to help the finishers,
and that it was not until three months later that he was set to grinding, do not
take his previous experience out of the case; and the danger arising from the
stone being swung over five inches above the beams on which the rest support-
ing the die travelled, is an obvious risk of his employment assumed by him. ·

In an action for personal injuries sustained while working on a certain machine
where the above facts were disclosed, the question whether a person who for-
merly worked on the machine did or did not do something for the purpose of
making it safer when using it, is immaterial and properly excluded.

Where the risk arising from the position of a machine is obvious and must be held
to have been assumed by a workman using it, it is of no consequence that the
business might have been conducted more safely by his employer.

·TORT, for personal injuries sustained by the plaintiff while in
the defendant's employ. Trial in the Superior Court, before
*Hardy,* J., who directed the jury to return a verdict for the
defendant; and the plaintiff alleged exceptions. The facts ap-
pear in the opinion.

*J. J. Shaughnessy,* for the plaintiff.

*J. W. McDonald,* for the defendant, was not called upon.

LORING, J.  In this action the plaintiff seeks to recover for losing three fingers of his left hand in " truing " a grindstone while in the defendant's employ.  The defendant is a manufacturer of cutting-dies.  Cutting-dies while in the process of being manufactured are ground down on a grindstone; the stone is thereby worn away and its surface becomes uneven.  " Truing " a stone is grinding it down again until its surface becomes uniform and even.

The plaintiff worked for the defendant from May, 1895, to September, 1895, and from January, 1896, until he was hurt on May 9th of the same year.  Before going to work for the defendant in 1895, the plaintiff had worked in die-shops at different times for two years and a half in all ; for eleven months, ending April, 1895, (a month before he first went to work for the defendant,) the plaintiff had worked in the Brockton Die Company's shop, and had been employed there in grinding about one third of the time; and during the latter part of the time that he was grinding for that company, he did the work of " truing " the grindstone used by him.

When he first applied for work at the defendant's factory, he was told by the defendant's brother " that all they wanted a man for was to do grinding."  He accepted the employment so offered and was set to work grinding the first day, and during the succeeding eight months in which he worked for the defendant whenever there was any grinding to be done he did part of it.

When the plaintiff re-entered the defendant's employ in January, 1896, he was employed helping the finishers on the floor, and continued in that work until April 11, when one Laverdreu, who was an experienced grinder and up to that time had been working on the grindstone which caused the accident in question, left the defendant's employ.  The plaintiff was then set to work on this grindstone and continued on that work until one McDonald came.  McDonald stayed but a week, and when he left, the plaintiff returned to this work.

The grindstone in question revolved on an axle set in metal boxes supported on heavy horizontal timbers.  There was a rest to support the die, when held against the stone to be ground, which extended crosswise from one timber to the other and could be moved forward or back as the size of the die required.  At

each end of the rest was fixed a bolt, which ran in a groove in the top of the two timbers, which supported the grindstone. Each one of these grooves was strapped with a strip of iron. The top of each bolt attached to the ends of the rest terminated in a thread on which was screwed a nut. By screwing down the two nuts the rest was fastened firmly in the position in which the operator desired it to be and held there by the iron strapping on the grooves in which the bolts ran.

Grindstones are " trued " by a workman holding against the surface of the stone as it revolves an iron or wire in such a position that the elevations constituting the inequalities on the face of the stone come in contact with the iron or wire and are thereby worn down ; the surface of the stone is thus made uniform. The iron or wire is held in position by holding it firmly on the rest which has been described.

In the case at bar, the plaintiff was " truing " a grindstone by holding against it a piece of iron gas pipe about five feet in length. The stone was revolving toward the plaintiff at the rate of not less than a hundred revolutions a minute. The injury was caused by the point of the pipe being carried down between the rest and the stone, together with the plaintiff's left hand, with which he was holding the " truing " iron in position. The stone was revolving so quickly that the plaintiff could not withdraw his hand and a fellow workman, attracted by his cries, ran to his aid and pulled his hand out, but not before he was so injured that he ultimately lost three fingers.

The plaintiff contends in the first place, that the defendant is liable for this injury because the metal boxes on which the axle of the stone rested were elevated five inches and a half above the timbers on which they were supported and on which the rest travelled back and forth. It appeared that the rest was only five-eighths of an inch thick ; the iron pipe, therefore, came in contact with the stone three and seven-eighths inches below the centre of the stone ; and it is contended that this intensified the danger of the iron being drawn under the stone by an inequality in its surface. It appeared that the metal boxes supporting the axle of the stone had been thus raised to enable the stone to clear the floor ; the stone was originally from six to seven feet in diameter, and the top of the timbers was not quite three feet from the floor level.

When the plaintiff was first employed, in 1895, he was employed to grind on this same grindstone, and no change had been made in it since that time. The fact testified to by the plaintiff that when he was employed the second time, four months after his first employment terminated, he was employed not to grind but to help the finishers, and that it was not until three months later that he was set to grinding, does not, as the plaintiff seems to contend, take his previous experience out of the case. Under these circumstances, the danger arising from the stone being swung something over five inches above the beams on which the rest travelled was obvious to a man of his experience, and was one of the risks assumed by him in undertaking the employment of grinding at that stone.

The second ground of liability relied on by the plaintiff is that the rest was defective. The defect consisted in the fact that the iron strappings of the grooves were loose and the threads of the bolts were worn, and, as a result, there was a spring to the rest when you bore down on it with a die or a " truing " iron. But the plaintiff testified that he noticed the spring which the rest had when he first used it, in 1895, and when he first began to use it again in April, 1896, and that the rest was in the same condition in which it was on the day of the accident during the three weeks next previous thereto, during which he had been grinding upon it. Moreover, in grinding dies, the rest is moved forward and back several times each day to adjust the distance between it and the stone to the particular die to be ground. If there was any defect in respect to the loose strappings or the worn threads, they were obvious to one in the position of the plaintiff, who was grinding on this stone for three weeks next before the accident. It is not clear on the plaintiff's testimony, whether there was any evidence that the accident happened from the rest having slipped. In testifying as to how the accident happened, the plaintiff stated that he was holding the pipe about five-eighths of an inch from the stone and — " the rod caught between the rest and the stone there and drew my hand up quickly and drew me right against it." He later testified that he told the defendant " that the rest must have slipped." We have assumed in his favor that the jury might have found that the accident was caused by the slipping of the rest.

The third ground on which the plaintiff puts the defendant's liability is that the iron with which the defendant furnished him and which he was using at the time of the accident was not a proper instrument to use in " truing " a stone. It appeared that during the three weeks next before the accident the plaintiff had been using this iron gas pipe as occasion required in " truing " the stone. · It also appeared that the defendant had usually provided iron wire one quarter of an inch in diameter for use in " truing " the grindstones; this wire came in bundles twelve feet in length and the workmen cut off strips four or five feet in length when they wished to use the wire on the stone. This quarter-inch wire had given out when the plaintiff went to work on this stone on April 11, or just before, and a new supply, which the defendant had sent for, had not come. And the defendant told the plaintiff " that he would order some, and that there was some gas pipe in the grinding-room, and that that was just as good until he got some quarter-inch wire." The gas pipe used was not a defective piece of pipe; if it be true that it is more dangerous than the quarter-inch wire, or the roll, that constitutes no ground of liability to one who voluntarily agrees to work with the machinery as he found it, including the use of the gas pipe in place of the wire or a roll, in " truing " the grindstone. The plaintiff relies on the defendant's statement to him that the gas pipe " was just as good until he got some quarter-inch wire," and contends that this gave him the right to assume that gas pipe was no more dangerous than quarter-inch wire was. The only difference between the two is that the wire would bend on encountering the inequality in the surface of the stone while the pipe would not bend; but this difference is obvious to a man of ordinary intelligence, and especially to one with the experience which the plaintiff had in working on and " truing " grindstones.

The plaintiff testified that he was not an " experienced grinder," and that he had never, either before or since the accident, let himself to work as an experienced grinder. That may be true. It may be true that in grinding dies the plaintiff had not had sufficient experience to be called an experienced grinder; but it is equally true that all the defects or conditions which, alone or together, caused the injury complained of in the

case at bar, were obvious to a person of ordinary intelligence, and that a man who had been employed in one die-shop for eleven months, during which he had been grinding for one third of the time, including, during a part of that time, "truing" the grindstone, and who had worked for this defendant for eight months, and during that time was employed in grinding dies and "truing" the grindstone whenever there was any grinding to be done, cannot be heard to say that he did not assume the risks arising from the position of the stone in relation to the rest and the timbers, from the facts that there was a spring to the rest, that the straps of the groove were loose, and the threads of the nuts were worn, and that he was furnished with a gas pipe in place of the quarter-inch wire, or a roll, for use in "truing" the grindstone.

Laverdreu's testimony was properly excluded. Whether he did or did not put something under the rest to support it while he was using it in the defendant's employ, was immaterial. If Laverdreu had done so, it would have no tendency to prove or to disprove that the defendant was negligent or that the risk was not obvious, and the evidence was objectionable as tending to confuse the jury by raising an immaterial issue, involving the actions of third persons.

The plaintiff's exception to the ruling excluding the question which the plaintiff asked of one Patten, who qualified as an expert in grinding dies, must be overruled. The question asked was, "In your opinion, is it the proper and the general way to place the axle of a grindstone for grinding dies five or six inches above the top of the frame?" As we have held that the risk arising from this position of the grindstone was obvious, and for that reason was assumed by the plaintiff, it is of no consequence that the business might have been conducted more safely by his employer.

*Exceptions overruled.*